UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,:** | : | |
| v. | : | 07CR137(CKK) |
| **BAHRAM SHAHRIARI,** | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Bahram Shahriari has fully accepted responsibility for his participation in a criminal offense by entering a plea of guilty on July 12, 2007, providing detailed information to the United States Attorney's Office, and agreeing to a substantial restitution payment. For the reasons set forth below, he respectfully asks that the Court impose a sentence of probation, without requiring home confinement or community confinement. In light of the government's motion under United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1, such a sentence would be within the Court's discretion, even under the previous mandatory Guideline regime. A probationary sentence is fair and appropriate given the particular circumstances of this case and the characteristics of this defendant, and it would be faithful to the factors set forth in 18 U.S.C. § 3553(a) that now frame the Court's sentencing decision.

**The Guidelines Calculation**

As the government has pointed out, the district court should begin by calculating the applicable Guideline range, and that calculation should be "the starting point and the initial benchmark" for the sentencing hearing. *Gall v. United States,* __ U.S. __, 128 S. Ct. 586, 596 (2007). The Presentence Investigation Report correctly reflects the parties' understanding that the combination of the base offense level, the agreed loss amount, and Mr. Shahriari's acceptance of

responsibility would initially lead to an offense level of 12. In addition, the government has appropriately filed a motion under U.S.S.G. § 5K1.1 recognizing Mr. Shahriari's cooperation with the government and his substantial assistance in the investigation that led to the guilty plea of Charles Wehausen. *See* Government's Consolidated Memorandum in Aid of Sentencing and Motion for Downward Departure ("Gov't Memo").  The U.S. Attorney's Office has described the information Mr. Shahriari provided in his multiple debriefing sessions as "detailed," "credible," and "corroborated."  Gov't  Memo at 2.

Under § 5K1.1, the amount of the reduction for substantial assistance to authorities "shall be determined by the court." The government has recommended a two level reduction in the guideline calculation – to a total offense level of 10 – with a further recommendation that the court impose a sentence at the low end of the guideline sentencing range for that level, which is 6 to 12 months. Offense Level 10 falls within Zone B, and § 5C1.1 provides that the minimum term for a Zone B sentence may be satisfied by a sentence of probation with conditions that substitute home detention for incarceration. A four level reduction for substantial assistance, which is within the court's discretion, would bring the offense level into Zone A, for which a straight probationary sentence is authorized.

In other words, even if the Court accepts the government's position, the government's request for a two level reduction and a Guidelines sentence would support a sentence of 6 months' home detention followed by a period of probation. The Court could also impose a sentence of probation under the Guidelines if it were to conclude that a 4 level reduction for substantial assistance is warranted. Thus, Mr. Shahriari's requested sentence represents only a modest departure from the government's proposal, and it could be imposed even if rigid adherence to the Guidelines were required.

"The Guidelines are not the only consideration, however." *Gall,* 128 S. Ct. at 596. According to the Supreme Court, the Guidelines are simply the beginning of the analysis, and the Court must also consider all of the § 3553(a) factors and make an individualized assessment. *Id.*

> [T]he Guidelines are not mandatory, and thus, the range of choice dictated by the facts of the case is significantly broadened. Moreover, the Guidelines are only one of the factors to consider when imposing sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment.

*Id.* at 602 (quotations omitted).

The statute directs the sentencing judge to "impose a sentence sufficient, but not greater than necessary" to serve its purpose. It calls upon the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a) (1), as well as the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, deter others, protect the public, and provide the defendant with any needed education or treatment. § 3553(a)(2). The Supreme Court has spoken clearly: "A judge may determine … that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough v. United States,* __ U.S. __, 128 S. Ct. 558, 564 (2007).

Taking all of these factors into consideration, a sentence of probation would be appropriate in this case.

**Mr. Shahriari's Personal Background**

Mr. Shahriari came to the United States after his family fled the radical Islamic revolution in Iran. He is a college graduate who lives with his family in Northern Virginia, and he has been married for fifteen years. His wife, Mandana, has a demanding full-time job at the International Monetary Fund, and the couple has three elementary school-aged children. Mr. Shahriari is self-employed. He has the flexibility to set his own hours and, depending on the jobs he has, to work from the home. Self-employment, with the flexibility it provides, was a career choice that Mr.

3

Shahriari made so that he could be the primary caregiver for his young children. He is also involved in the care of his elderly mother, who is in poor health, and his wife's parents, all of whom live nearby.

Mr. Shahriari is mindful that a sentence of community confinement or home detention would represent an exercise of the court's discretion at the low end of the Guideline range, and he is grateful for the government's recommendation. He acknowledges that such a sentence would in all likelihood permit him to continue to work. But in performing the usual functions of a concerned and involved parent – particularly the one primarily responsible for the care of such young children -- Mr. Shahriari needs to be able to come and go. He takes the three children, ages 7, 9, and 10, to school and back, to their medical appointments, to school events, and to their soccer and basketball practices and games. He is also an active member of the family's church and is a leader of the children's youth group activities. In her letter to the court, attached as Exhibit 1 to this memorandum, Mrs. Shahriari has described these activities, and her husband's importance to the older and younger members of the family, in detail.[1]

In *Gall,* the Supreme Court expressly recognized that a court might be called upon to consider evidence that innocent third parties are dependent upon the individual standing before the court. *Id.* at 596. Indeed, during oral argument in that case, the attorney for the government stated that "probation could be an appropriate sentence … if 'there are compelling family circumstances where individuals will be very badly hurt in the defendant's family if no one is available to take care of them.'" *Id.* at 602. The Shahriaris respectfully submit that this is such a case. While the children

---

[1] The court may note that the defense has submitted but one letter on Mr. Shahriari's behalf and that other family members and school and church officials have not participated in these proceedings. Mr. Shahriari's remorse and humiliation is so great that he has not revealed the fact of his participation in a criminal scheme to anyone except his wife, and therefore, he was not in position to solicit additional letters.

of course also have a loving mother, the circumstances of her job and the need for her to provide economic support to the family require Mr. Shahriari to take a very active role, and the family and the couple's parents will suffer if he is unable to do so. Since a sentence of probation would involve only a small deviation from the government's calculation of the Guideline range, such a sentence would be well within the court's discretion under the particular circumstances of this case.

### The Nature of the Offense

The PSR is accurate in its general description of the offense, but it does not include certain details that describe Mr. Shahriari's role, how he came to be involved in the conspiracy, and what he got out of it. The details – while not excusing his conduct – provide substantial mitigating circumstances that should also be considered in the sentencing decision under § 3553(a)(1) and (a)(2)(A).

The kickback scheme was not Mr. Shahriari's idea, nor was it something he eagerly embraced. Quite the opposite is true. After Mr. Shahriari submitted a proposal to the government contractor, PM Services, for work on the Federal Cohen and Switzer buildings, Charles Wehausen demanded a cash kickback. Mr. Shahriari refused to pay Wehausen any cash. Mr. Shahriari was happy to compete fairly for the work, but it became clear to him that in order to get the work, he would have to arrange for Wehausen to receive something as well. In response to Wehausen's demand, then, Mr. Shahriari told Wehausen he could pay him if Wehausen actually performed some work on the job. At the time, Mr. Shahriari rationalized in his mind – wrongly, he acknowledges – that it would not be improper to pay Wehausen for work actually performed. And so he arranged for Wehausen to be paid to perform work, for example, the task of programming and starting the variable frequency drives (VFD) that Mr. Shahriari's company was responsible for providing and starting. Mr. Shahriari arranged for the sales manager of the VFD manufacturer to come from

5

Houston to Washington to spend several hours with Wehausen training him on a demo unit.

Mr. Shahriari acknowledges that the amount he paid Wehausen did not bear a relationship to the value of the work that Wehausen performed, and he also acknowledges that as time went on, he did not supervise Wehausen's work or monitor him to ensure that he actually did any work at all. He acknowledges, in other words, that what he initially rationalized in his mind as an acceptable way of paying Wehausen evolved into a raw kickback scheme, with false invoicing and a sham company created by Wehausen to carry out the scheme. Mr. Shahriari offers no excuse for his participation in this scheme. There is no excuse for criminal conduct, and Mr. Shahriari recognizes that. But there are mitigating circumstances, and it is appropriate for the court to understand that Mr. Shahriari was not the architect of the scheme, and that he participated, reluctantly, because he believed it was the only way he could obtain work under the contract that Wehausen was administering.[2] There is no evidence that Mr. Shahriari ever offered to pay or did pay any other contracting officer or

---

[2] Mr. Shahriari points out that under analogous government contracting circumstances, he could be considered the victim of extortion. The Hobbs Act, 18 U.S.C. § 1951, defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right," and the D.C. Circuit has consistently held that threats of economic harm are sufficient to constitute a violation of the statute. *See e.g., United States v. Edwards,* 324 F. Supp. 2d 10, 11 (D.D.C. 2004) (upholding extortion conviction where asbestos inspector threatened to bar company from contracting with D.C. Department of Health and apply stricter regulatory enforcement unless the company paid him $10,000); *United Stats v. Shyllon,* 10 F.3d 1, 3 (D.C. Cir. 1993) (finding tax auditor's threats of audits and fines for company that refused to pay him off were sufficient to support conviction for extortion). Similarly, other federal courts have found threats of economic harm to satisfy convictions for extortion. *See e.g., United States v. Vigil,* 523 F.3d 1258, 1263 (10th Cir. 2008) (defendant, a New Mexico State Treasurer, was guilty of extortion for conditioning the award of state contracts on the bidder's willingness to hire and share portion of the potential profits with his predecessor's wife); *United States v. Holmes,* 767 F.2d 820, 822 (11th Cir. 1985) (defendant and a co-conspirator, the Mayor of Augusta, Georgia, demanded $100,000 in exchange for support of real estate project, and threatened to veto the project if the payment was not made). While this observation places his conduct in context for purposes of sentencing, Mr. Shahriari wishes to emphasize that he does not dispute at all that he engaged in criminal conduct and accepts responsibility for his knowing participation in the fraud conspiracy alleged in the criminal information.

construction manager to obtain a contract. As Mrs. Shahriari's letter reveals, this conduct was not consistent with the defendant's character, and it is unlikely to be repeated.

Furthermore, Mr. Shahriari, was not the principal beneficiary of the scheme. He kept about one-fourth of what constitutes the restitution amount, but he paid Wehausen three-fourths.[3] Notwithstanding that, Mr. Shahriari has agreed to pay one-half the total restitution amount calculated as the loss to the government from the scheme. In other words, the restitution amount for Mr. Shahriari will be almost twice what he actually received from the scheme, whereas Wehausen, the more culpable party as well as the principal beneficiary of the scheme, will be obliged to pay in restitution substantially less than what he actually received. Mr. Shahriari's agreement to pay more than his fair share of the restitution is another mitigating circumstance that should be considered in fashioning his sentence.[4]

**Restitution**

Mr. Shahriari and the government are in agreement that the court should order restitution in the amount of $58,590. He asks the court to consider his willingness to pay an amount of restitution that reflects the seriousness of the offense and exceeds what he received in the scheme as a further

---

[3] The restitution amount has been calculated as the difference between the amount PMS paid and the cost of the jobs. On any job, Mr. Shahriari's company would normally mark up the costs to achieve a 10-15% profit, so some portion of the amount he received for work on the PMS contract was his customary profit of 10-15%.

[4] Counsel for Mr. Shahriari and for the government discussed the appropriate allocation of restitution under circumstances where the government was insisting that the co-conspirators should be jointly and severally liable for the entire amount of the restitution, with the government theoretically free to go after the easier recovery. Mr. Shahriari could have contested the government's theory or argued that Mr. Shahriari's restitution, in light of Wehausen's own criminal conviction and restitution obligation, should be limited to the amount he actually received, approximately $30,000. Instead, Mr. Shahriari agreed to a 50-50 allocation, which in effect imposed a penalty on him while giving a windfall to Wehausen.

indication of his acceptance of responsibility and a factor supporting the sufficiency of a probationary sentence under § 3553(a)(2).

*   *   *

In conclusion, under all of the facts and circumstances set forth above, Mr. Shahriari respectfully requests that the court impose a sentence of probation with appropriate conditions.

Respectfully Submitted,

/s/ Robert P. Trout_____
Robert P. Trout (D.C. Bar #215400)
Amy Berman Jackson (D.C. Bar # 288654)
Trout Cacheris, PLLC
1350 Connecticut Avenue, N.W.
Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax: (202) 464-3319

Counsel for Bahram Shahriari

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of July, 2008, I served copies of the foregoing Memorandum in Aid of Sentencing by ECF.

/s/ Robert P. Trout_____
Robert P. Trout

Mandana D. Shahriari

Vienna, Va 22182                                                                                         (703) 761-0697

---

The Honorable Colleen Kollar-Kotelly
United States District Court
333 Constitution Avenue, NW
Washington, DC 20001

July 1, 2008

Dear Judge Kollar-Kotelly:

Thank you in advance for taking the time to read this letter and giving me the opportunity to describe what Bahram Shahriari means to me, my family and our community.

Bahram and I were married in August of 1993 and have spent all of our time on building a family and a life together ever since. We have 3 children, ages 10 ½ , 9 and 7 ½ years. Although raising a family is very challenging, we have and continue to work to the best of our abilities to give them a secure home, good education, and most importantly our love.

Bahram is an amazing father, and he is a 100% available to attend to our children's needs. He is involved with the children's daily routine, from helping with getting them out of the house in the morning to picking them up in the afternoon and taking them to various activities. He started his own business in 2000, just so he could work at home and be more accessible to our children. I work in the International Monetary Fund, and unfortunately do not have a very flexible schedule. I leave the house at 8 and return 6:30 after a 50-minute commute from D.C. Therefore, it is Bahram who has to take the kids to all after-school activities. I can only hope to meet them at the soccer field and help with bringing 2 of them home while one finishes practice.

In addition to the children, we have obligations to our parents. Recently, my parents' home caught on fire, and they lived with us (since I am the only sibling with the capability to house them) for almost 5 months. Bahram was not only the most gracious host to his in-laws, but also helped tremendously in following up with the repairs. Last Saturday night, Bahram rushed his mother to the hospital due to high blood pressure and severe pain and was there for over 6 hours. These are just examples of how dependent both my parents and his Mom are on us, mainly on Bahram, as I take care of the children while he fulfills his "son/son-in-law" duties.

His other obligations are to our school and church. We have pledged over $22,000 over the next 5 years to build a bigger school. In addition, we have donated over $4000 a year for the past two years, to the school for various projects. Also, as I am a room parent and the vice president of the PTO, I involve my husband in all of my plans and duties as a volunteer. He also volunteers in many school functions on a regular basis. This past Monday, he was asked to attend a meeting to

EXHIBIT 1

help find a new "headmaster" for our school for the academic year 2009-10. As for our church, Bahram and I are both involved with Sunday school. In addition to regular monetary donations,

he helps me prepare the teaching materials, and is involved with teaching the class. He has also accepted to co-chair the construction committee as our community is trying to raise money to build a church in Vienna, VA. Both our school and church rely heavily on Bahram for not only monetary contributions, but his manpower and his willingness to help in any way he can.

In short, I realize that Bahram was a participant in wrong doing, and he has tried to remedy it by fully cooperating with the authorities in order to make it easier to apprehend the main individual at fault. In addition, the shame and remorse has touched him deeper than he could verbally explain. He will not allow anyone to know what he has done, not even his family, and so there is no one else besides me who can write to you to tell you about his character. I can only attest to it, since I know him so well and have witnessed the change in his fun, loving character. I can assure you that his participation in this wrong doing was completely out of character for him. Bahram is a humble, down-to-earth person, who drives an 11-year old Honda Accord, makes me return designer clothes that I buy for him, and constantly questions why people around us are so materialistic. We live in a modest home (that we built over 10-years ago to house our brand new family), and spend most of our free time being with the children and teaching them life-long values. Bahram's out-of-character behavior has to this date jeopardized our home and family dynamics in an emotional way. However, from this date forward, I cannot imagine how I would be able to run our household without his help, and without his constant availability to take care of the children. In the same manner, our extended families, religious and school communities will also suffer if Bahram were to not be able to fulfill his obligations and good will.

I am grateful to have this opportunity to give you a bit of insight into his real character, although what I have said in 2 pages does not do justice in describing a man who means the world to me and my kids.

Thank you for reading my letter.

Sincerely,

*M. Shahriari*

Mandana D. Shahriari